**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAMERON LAWRENCE, et al., | CASE NO. CV F 09-1598 LJO DLB |
| Plaintiffs, | **ORDER ON DEFENDANT AURORA LOAN SERVICES LLC'S F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 23.) |
| AURORA LOAN SERVICES LLC, et al, | |
| Defendants. | |

**INTRODUCTION**

Defendant Aurora Loan Services LLC ("Aurora") seeks to dismiss plaintiffs Carmeron Lawrence ("Mr. Lawrence") and Marion Singer ("Ms. Singer's") claims arising out of the foreclosure and trustee's sale of their Groveland, California vacation home ("property"). Mr. Lawrence and Ms. Singer (collectively "plaintiffs") contend the trustee's sale must be set aside in absence of proper notice to plaintiffs. This Court considered Aurora's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the January 28, 2009 hearing, pursuant to Local Rule 230(g). For the reasons discussed above, this Court DISMISSES the claims challenged by Aurora's motion to dismiss.

# BACKGROUND[1]

## Plaintiffs' Loan And Default

Plaintiffs are married and owned the property. In July 2006, Mr. Lawrence obtained a $230,000 refinance loan which was secured by a deed of trust ("DOT") on the property. Loan servicing was traded to Aurora and "in essence Aurora became the true mortgagee and/or the agent for the true mortgagee."

During August 2006 to September 2008, plaintiffs made $823 monthly payments to Aurora. In October 2008, Aurora advised Ms. Singer that Aurora would not consider a loan modification unless plaintiffs were 60-90 days behind on their loan payments. Plaintiffs did not make their October 2008 loan payment. During October 2008 to March 2009, Ms. Singer continued to address loan modification with Aurora.

On December 16, 2008, defendant Cal-Western Reconveyance Corporation ("Cal-Western"), as authorized agent, recorded a default notice against the property, and plaintiffs "were completely unaware" of it. Plaintiffs neither were served with nor received a default notice copy. Aurora did not advise plaintiffs that the default notice had been recorded despite that plaintiffs "were in constant telephone contact from December 2008 through March 2009 with Aurora." Aurora assured plaintiffs that Aurora would consider plaintiffs' loan modification request.

On April 1, 2009, Mr. Lawrence filed for Chapter 7 bankruptcy. Aurora advised plaintiffs that plaintiffs' default "would either have to be resolved through the court system or that Lawrence would have to dismiss the bankruptcy proceeding." Mr. Lawrence dismissed his bankruptcy on May 25, 2009.

## Trustee's Sale Of Property

After Cal-Western had substituted as DOT trustee, it recorded a notice of trustee's sale of the property on March 19, 2009.

On July 17, 2009, Aurora advised Ms. Singer by telephone that Aurora had posted a trustee's sale notice on the property's door on March 21, 2009 to advise that the property was to have been sold on April 6, 2009. Plaintiffs did not see a posted trustee's sale notice despite repeated trips to the property after March 21, 2009 in that the trustee's sale notice "was never posted on the Property as required by

---

[1] The factual recitation is derived generally from plaintiffs' first amended complaint ("FAC"), the target of Aurora's challenges.

2

Civil Code § 2924b." Plaintiffs have never been served with the trustee's sale notice, and Aurora repeatedly advised Ms. Singer that "no foreclosure date had been set." Plaintiffs claim that the trustee's sale notice was not posted on the property or in a public place and was not published in the city of sale once a week for three weeks.

On June 26, 2009, defendant Cal-Western conducted a trustee's sale of the property at which Aurora paid $240,878.71, which plaintiffs believe is the amount Aurora claims was owed by plaintiffs.

Plaintiffs claim that if they had been advised of the trustee's sale, "they would have paid any and all amounts necessary to reinstate the loan" but "were prevented from exercising their statutory rights to reinstate the loan."

Plaintiffs learned of the trustee's sale when they discovered a notice on the property's door on July 17, 2009. A notice to vacate was posted on the property's door on July 24, 2009.

### **Plaintiffs' Claims**

Aurora challenges the FAC's claims to set aside the trustee's sale, to cancel the trustee's deed and to quiet title of the property against Aurora and for negligence, accounting, breach of the contract of good faith and fair dealing, and injunctive relief. The FAC seeks declarations that the property sale to Aurora is void and that Aurora has no right in the property adverse to plaintiffs. The FAC seeks to set aside the trustee's sale and to enjoin Aurora to sell the property. The FAC further seeks emotional distress and punitive damages and an accounting between plaintiffs and Aurora.

### **DISCUSSION**
### **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

Aurora seeks dismissal of several FAC claims against it on grounds discussed below. Plaintiffs contend that the non-judicial foreclosure sale of the property must be set aside "as it was not conducted with fairness, regularity or scrupulous integrity."

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

1 *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but ask it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

4

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft*, __ U.S. __, 129 S.Ct. at 1949-1950.

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken

---

[2] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). A court properly may take judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

As such, this Court is able to consider plaintiffs' pertinent loan and foreclosure documents.

### Failure To Tender Indebtedness

#### *Foreclosure Irregularities*

Aurora attacks globally the claims subject to its motion to dismiss on grounds that the FAC lacks "a full, credible tender of the amount" plaintiffs owe on their loan. Aurora accuses plaintiffs of attempting "to wriggle free of the basic requirement that they tender the indebtedness to invoke the equitable remedy of setting aside the foreclosure sale."

Plaintiffs respond that the FAC need not allege tender of amounts owed since the FAC alleges that the sale to Aurora is void. Plaintiffs argue, and the FAC alleges, that the sale is void in that:

1. Notices of default and trustee's sale were not mailed to plaintiffs' last known address;
2. Plaintiffs did not receive "any notice of the Notice of Default";
3. The trustee's sale notice was not posted on the property;
4. Plaintiffs did not receive "proper notice of the Notice of Sale";
5. Plaintiffs did not receive "appropriate notice of the postponed sale after the dismissal of their bankruptcy action"; and
6. "Plaintiffs were deprived of their statutory rights to reinstate the loan by Defendants' actions."

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15.

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured

6

indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997). In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal has explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at 118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495.) Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at 118, 92 Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985). "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common

law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200 Cal.App.3d at 1165, 246 Cal.Rptr. 421.

The FAC alleges that plaintiffs are "ready, willing and able to pay any and all amounts necessary to reinstate the loan" and "to tender those sums, if any that the Court finds due and owing on rendering the accounting requested." Aurora notes that with the property's sale, the issue is not "reinstating the loan" but "tendering the entire amount need to pay off the loan" and that an offer to reinstate the loan is insufficient. Aurora points out that to challenge a foreclosure sale, a borrower must actually pay, or offer to pay, the entire loan amount prior to the sale. Aurora characterizes the FAC's tender allegations as "no more that a formulaic recitation of the elements" which fail to substantiate whether plaintiffs can tender their indebtedness.

Plaintiffs offer no binding or meaningful authority that their tender to reinstate the loan is sufficient to void the property sale. The authorities cited above require a tender of the "indebtedness," not loan reinstatement. Aurora correctly questions whether plaintiffs are able to tender their indebtedness given that the FAC alleges their failure to make their $823 monthly payments and Mr. Lawrence's bankruptcy. Aurora encourages this Court not to accept assertions of tender in the absence of explanation "how this complete tender offer is possible."

The FAC's absence of allegations to ability to tender indebtedness is troubling. Plaintiffs must rely on more than tender of loan reinstatement to avoid the results of inability to tender their indebtedness.

### *Bona Fide Purchaser For Value*

Plaintiffs argue that Aurora is not a bona fide purchaser for value ("BFP") of the property in that Aurora "had notice prior to its acquisition of the property that the Plaintiffs were asserting that they had never received the necessary statutory notice for a nonjudicial foreclosure" and Aurora had "an interest in the loan or deed of trust."

A BFP "who acquires his interest in real property without notice of another's asserted rights in the property takes the property free of such unknown rights. [Citations.]" *Hochstein v. Romero,* 219 Cal.App.3d 447, 451, 268 Cal.Rptr. 202 (1990). "'The elements of bona fide purchase are payment of value, in good faith, and without actual or constructive notice of another's rights. [Citation.]' [Citation.]" *Gates Rubber Co. v. Ulman,* 214 Cal.App.3d 356, 364, 262 Cal.Rptr. 630 (1989).

Even assuming Aurora is not a BFP, plaintiffs offer nothing meaningful to excuse plaintiffs from the tender requirement. Their BFP points are a red herring.

### *Inequitable Result*

Plaintiffs argue that a full tender of amounts owed would be inequitable in that Aurora "acquired the property through the foreclosure process with knowledge that Plaintiffs had not received proper notice." Plaintiffs rely on FAC allegations that Aurora representatives advised Ms. Singer during telephone conversations that:

1. There was no scheduled foreclosure date despite that Cal-Western had recorded a trustee's sale notice;
2. Aurora would not accept plaintiffs' loan payments when Ms. Singer asked if plaintiffs should make them;
3. Ms. Singer "need not worry about any foreclosure sale" given the "moratorium in California on foreclosures."

Plaintiffs note that they could have tendered amounts to reinstate the loan prior the trustee's sale as permitted under California Civil Code section 2924c(e).

Aurora responds that inequity would arise "to allow a party to acquire a property with borrowed money and then obtain free and clear title without paying the debt, as plaintiffs propose."

Plaintiffs attempt to estop Aurora's invocation of the tender rule based on Aurora's

representations that the property was not subject to foreclosure. "It is a well-established rule of law that when the act or promise of one person causes another in reliance thereon to do or forbear from doing a thing to his detriment, which he would have otherwise performed, the promisor is estopped from taking advantage of the act or omission of the promisee." *Calistoga Nat. Bank v. Calistoga Vineyard Co.,* 7 Cal.App.2d 65, 72, 46 P.2d 246 (1935).

Plaintiffs claim that they stopped their loan payments to meet Aurora's requirement of 60-90 day missed payments to qualify for loan modification. Plaintiffs further claim that after Aurora led them down the path of default, Aurora misrepresented there was no foreclosure and would not accept plaintiffs' payments to prevent plaintiffs to reinstate the loan. Plaintiffs claims sound in fraud,[3] not an excuse to avoid the tender rule. Plaintiffs provide not pertinent authority that estoppel supports avoidance of the tender rule.

Plaintiffs further argue that "equity will be accomplished" if the foreclosure is set aside and their loan reinstated. Plaintiffs claim injustice from an "offer to pay their entire debt" given Aurora's misrepresentations. Equity "will assert itself in those situations where right and justice would be defeated but for its intervention." *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 119 Pac. 82 (1911). As such, plaintiffs conclude that they should need only "to tender or offer to tender the amounts necessary to reinstate the loan."

The key problem with plaintiffs' equity arguments is that they ignore that plaintiffs invited the problems they face. Plaintiffs stopped making their loan payments to seek a loan modification. Plaintiffs attempt to ignore conveniently their original loan obligations. Plaintiffs presuppose that Aurora was required to modify their loan. The FAC alleges no facts for such notion. Plaintiffs are unable to cloak themselves with equity when they attempted to usurp their original loan. Plaintiffs lost any equitable hold with their intentional cease of payments.

The FAC's absence of allegations to satisfy the tender rule supports dismissal of plaintiffs' claims subject to Aurora's motion to dismiss. Plaintiffs' acknowledged failure to make monthly payments and Mr. Lawrence's bankruptcy reflect inability to tender amounts to support dismissal of

---

[3] Plaintiffs allege fraud claims which Aurora does not challenge with its motion to dismiss.

10

claims. Plaintiffs provide no meaningful legal authority to avoid the tender rule with mere tender to reinstate the loan.

### Set Aside Trustee's Sale And Cancel Trustee's Deed

The FAC's first claim alleges that the trustee's sale was improper because:

1. The default notice was not mailed to plaintiffs at their last known address;
2. Plaintiffs did not receive notice of the default notice;
3. The trustee's sale notice was neither posted on the property nor mailed to plaintiffs at their last known address;
4. Plaintiffs did not receive proper notice of the trustee's sale notice;
5. Plaintiffs were not provided appropriate notice of the postponed trustee's sale; and
6. Plaintiffs were deprived of statutory rights to reinstate the loan.

The FAC's second claim alleges that "Aurora has no estate, right, title, or interest in the Property" and that the "Trustee's deed in invalid."

Aurora characterizes the first and second claims as "essentially identical" and as unviable for failure "to get past the threshold requirement that they tender the full amount of the indebtedness." Plaintiffs repeat their claim that no allegation of full tender "is necessary."

Aurora is correct. As discussed above, the failure to allege a meaningful tender of indebtedness dooms the first and second claims to set aside trustee's sale and to cancel trustee's deed.

### Negligence

The FAC's (sixth) negligence claim alleges that Aurora "carelessly and negligently permitted a trustee's sale to occur on Property despite the fact that Plaintiffs were not properly served with the Notice of Default or Notice of Sale."

Aurora notes that the negligence claim "is clearly integrated with a claim of a wrongful sale" and that "plaintiffs cannot raise a genuine challenge to the trustee's sale because they have not tendered." Aurora faults the FAC's failure to identify an actionable duty owed by Aurora, "as a loan servicer," to plaintiffs.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."

*Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.*, 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

"The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516 (1997).

Plaintiffs attempt to impose a general duty of care on Aurora in that plaintiffs "were foreseeably endangered by Aurora's conduct." "As a general principle, a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 434-435, 131 Cal.Rptr. 14 (1976). Plaintiffs point to Aurora's representations to entice plaintiffs to stop their mortgage payments and assurances of no foreclosure despite knowledge that the trustee had not provided "requisite statutory notice" to plaintiffs.

Aurora correctly notes the absence of an actionable duty between it and plaintiffs in that "Aurora owed plaintiffs no legal duty of care by virtue of acting as their loan servicer." The FAC alleges no facts of Aurora's cognizable duty to plaintiffs to support a negligence claim. Aurora is further correct that a "claim of pure negligence . . . in allowing a foreclosure sale is not supported by the allegations of fraud." As noted above, the FAC sounds in fraud, and plaintiffs pursue fraud and negligent misrepresentation claims against Aurora. Plaintiffs' purported negligence claim arises from their failure to pay their loan and to tender their indebtedness. As a reminder, the rationale behind the tender rule "is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs." *FPCI RE-HAB 01 v. E & G*

12

*Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989). In absence of a legitimate tender, plaintiffs have not and cannot plead damages arising from notice or service problems, especially given their intentional failure to make payments.

The FAC further lacks facts of special circumstances to impose duties on Aurora. A lender "owes no duty of care to the [borrowers] in approving their loan. Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (citing several cases). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53.

"Public policy does not impose upon the Bank absolute liability for the hardships which may befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516. The success of a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any information it may have had").

Mortgage servicer Aurora correctly characterizes itself as "financial institution for purposes of this inquiry" in that neither the FAC nor plaintiffs' opposition papers identify Aurora's actions "other than service the loan and take the usual servicer's role in nonjudicial foreclosure." The FAC allegations reflect plaintiffs and Aurora's arms-length relationship with no imposition of an actionable duty on Aurora. The FAC fails to substantiate a special relationship with Aurora or an actionable breach of duty to warrant dismissal of the negligence claim.

**Quiet Title**

The FAC's (seventh) quiet title claim seeks "to quiet title against the claims of Aurora obtained through the wrongfully granted trustee's deed granting" the property to Aurora. Aurora faults the quiet title claim based on plaintiffs' failure to pay the secured debt.

California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein." California Code of Civil Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

1. A legal description and street address of the subject real property;

2. The title of plaintiff as to which determination is sought and the basis of the title;

3. The adverse claims to the title of the plaintiff against which a determination is sought;

4. The date as of which the determination is sought; and

5. A prayer for the determination of the title of the plaintiff against the adverse claims.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").

With the FAC's absence of a meaningful ability or willingness to tender plaintiffs' indebtedness, their quiet title claim fails, notwithstanding plaintiffs' claim that a tender allegation is unnecessary.

### Accounting

The FAC's (eighth) accounting claim asks this Court to determine the "amount due and owing" to reinstate plaintiffs' loan if the Court determines that plaintiffs owe money to Aurora.

Aurora argues that a statement of how much plaintiffs owe in unavailable in absence of a connection between "their accounting request and any substantive action." Aurora concludes that plaintiffs are not "entitled to an accounting as a means to find out how much they owe."

Plaintiffs respond that they request "an accounting in relationship to their claim to set aside the nonjudicial foreclosure and trustee's deed and reinstate the loan." Plaintiffs claim they "are simply seeking a court determination of the amount due and owing to reinstate the loan." Plaintiffs contend that the FAC sufficiently alleges their relationship with Aurora and that Aurora knows the amount to reinstate the loan.

An accounting cause of action is equitable and may be sought where the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable. *Civic Western Corp. v. Zila Industries, Inc.,* 66 Cal.App.3d 1, 14, 135 Cal.Rptr. 915 (1977). A suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law. *Civic Western,* 66 Cal.App.3d at 14, 135 Cal.Rptr. 915. An accounting will not be accorded with respect

to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain. *Civic Western,* 66 Cal.App.3d at 14, 135 Cal.Rptr. 915.

"A right to an accounting is derivative; it must be based on other claims." *Janis v. California State Lottery Com.*, 68 Cal.App.4th 824, 833-834, 80 Cal.Rptr.2d 549 (1998). Moreover, as an equitable matter, an accounting frequently "presents a fiduciary relation between the parties in the nature of a trust which brings it especially within equitable remedies." *Kritzer v. Lancaster*, 96 Cal.App.2d 1, 6, 214 P.2d 407 (1950).

The FAC lacks allegations of complexity or a fiduciary relationship to warrant an accounting to plaintiffs. Plaintiffs acknowledge the ease to determine the amount to reinstate their loan. Plaintiffs lack a derivative basis for an accounting given the failure of plaintiffs' identified supporting claims (set aside trustee's sale and cancel trustee's deed). The complaint fails to invoke this Court's equity powers to provide plaintiffs accounting relief to warrant dismissal of the accounting claim.

### Breach Of The Implied Covenant Of Good Faith And Fair Dealing

The FAC's (ninth) breach of the contract of good faith and fair dealing claim alleges that defendants "breached the duties of good faith and fair dealing owed to Plaintiffs."

Aurora faults that FAC's failure to allege a contract or special relationship between plaintiffs and Aurora to support a breach of the implied covenant of good faith and fair dealing claim.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000) (quoting *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 49, 275 Cal.Rptr. 17 (1990). "Without a contractual relationship, [plaintiffs] cannot state a cause of action for breach of the implied covenant." *Smith*, 225 Cal.App.3d at 49, 275 Cal.Rptr. 17.

The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the

15

contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004) (citation omitted.) "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120, 76 Cal.Rptr.3d 585 (2008). "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565 (2004) (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal.4th 317, 349-350, 100 Cal.Rptr.2d 352 (2000)).

Aurora correctly notes that the FAC fails to allege a specific contract between plaintiffs and Aurora as servicer of plaintiffs' loan. The FAC lacks an alleged breach from an identifiable, enforceable contract to invoke the implied covenant of good faith and fair dealing.

Moreover, even in the absence of a stated implied covenant claim, no implied covenant tort is available to plaintiffs. "Generally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (applying California law). "Moreover, even if there were a contractual relationship between the parties, [plaintiffs] have pled no facts establishing a 'special relationship' between them which could justify extending tort liability for bad faith to the present context." *Smith*, 225 Cal.App.3d at 49, 275 Cal.Rptr. 17.

The "implied covenant tort is not available to parties of an ordinary commercial transaction where the parties deal at arms' length." *Pension Trust Fund*, 307 F.3d at 955. California courts do not invoke a special relationship between a lender and borrower. *See Kim v. Sumitomo Bank*, 17 Cal.App.4th 974, 979, 21 Cal.Rptr.2d 834 (1993) ("the relationship of a bank-commercial borrower does not constitute a special relationship for the purposes of the covenant of good faith and fair dealing"); *Mitsui Manufacturers Bank v. Superior Court*, 212 Cal.App.3d 726, 729, 260 Cal.Rptr. 793 (1989) (borrower precluded to assert tortious breach of implied covenant of good faith and fair dealing claim against lender). "A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such." *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 476, 261 Cal.Rptr. 735 (1989)

The FAC alleges no facts of a special relationship between Aurora and plaintiffs to invoke a

fiduciary or other relationship to impose a tortious bad faith claim against Aurora. The FAC alleges no more than a typical home mortgage with Aurora as loan servicer. The FAC makes no attempt to allege a special relationship with meaningful facts. The breach of implied covenant of good faith and fair dealing claim fails in absence of allegations of a sufficient contractual or special relationship between Aurora and plaintiffs.

This Court construes plaintiffs's withdrawal of the claim to concede the absence of its viability. Plaintiffs' attempt to "reserve" an attempt to amend the claim does not prevent its dismissal with prejudice.

**Injunctive Relief**

The FAC's (tenth) injunctive relief claim seeks "an injunction preventing Defendants from selling the Property to a third party or evicting Plaintiffs from the Property."

Aurora argues that the injunctive relief claim is not viable in that it is "intertwined with the claims based on the alleged impropriety of the trustee's sale" and fails with such claims. Aurora notes that plaintiffs' requested injunction "would have no meaning unless the trustee's sale is set aside" and is unavailable without the tender "condition precedent."

Plaintiffs agree that a "request for an injunction is a remedy that must be tethered to some independent legal duty owed by the defendant to the plaintiffs."

"Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen*, 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. In the absence of plaintiffs' meaningful tender of indebtedness, no beneficial purpose appears for plaintiffs' requested injunctive relief.

"Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942). Neither a viable claim nor "an independent duty" supports injunctive relief to doom the FAC's (tenth) injunctive relief claim.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice the FAC's claims against Aurora for set aside trustee's sale (first), cancel trustee's deed (second), negligence (sixth), quiet title (seventh), accounting (eighth), breach of contract of good faith and fair dealing (ninth), and injunctive relief (tenth); and

2. ORDERS Aurora, no later than February 10, 2010, to file and serve an answer to plaintiffs' remaining claims.

IT IS SO ORDERED.

**Dated:   January 25, 2010**          /s/ Lawrence J. O'Neill
                                       UNITED STATES DISTRICT JUDGE