# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON LAWRENCE and MARION SINGER, <br><br> Plaintiffs, <br><br> v. <br><br> AURORA LOAN SERVICES LLC, et al., <br><br> Defendants. | 1:09cv01598 LJO DLB <br><br> ORDER REGARDING PLAINTIFFS' MOTION FOR REMAND TO STATE COURT AND/OR IN THE ALTERNATIVE TO ALLOW AMENDMENT OF COMPLAINT TO CLARIFY THAT DAMAGES ARE SOUGHT AGAINST DEFENDANT CAL-WESTERN <br> (Document 10) |

On October 9, 2009, Plaintiffs Cameron Lawrence and Marion Singer ("Plaintiffs") filed the instant motion to remand the action to state court and/or in the alternative to allow amendment of the complaint and to remand. The matter was heard on January 29, 2010, before the Honorable Dennis L. Beck, United States Magistrate Judge. B. Matteoni appeared telephonically on behalf of Plaintiffs. Robert Shaw appeared telephonically on behalf of Defendant Aurora Loan Services LLC.

**PROCEDURAL BACKGROUND**

Plaintiffs filed the underlying action in Tuolumne County Superior Court on August 6, 2009. The complaint named Aurora Loan Services, LLC, Cal-Western Reconveyance

1

Corporation and Does 1 through 100 as Defendants.  The complaint asserted eleven causes of action with regard to certain real property located in Tuolumne County, California.

On August 27, 2009, Defendant Cal-Western Reconveyance Corporation ("Cal-Western"), the foreclosure trustee, filed a declaration of non-monetary status pursuant to California Civil Code § 2924l in the state court action.  Exhibit 3 to Notice of Removal.

On September 9, 2009, Defendant Aurora Loan Services LLC ("Aurora"), a citizen of Delaware, removed the action to this Court on the basis of diversity jurisdiction.  In the Notice of Removal, Aurora asserted that the citizenship of Cal-Western was irrelevant for purposes of diversity because it filed a declaration of non-monetary status.

On September 16, 2009, Aurora filed a motion to dismiss the complaint with prejudice.

On October 9, 2009, Plaintiffs filed a First Amended Complaint ("FAC") against Defendants.  The FAC asserts causes of action to set aside the trustee's sale and to cancel the trustee's deed against all Defendants, recovery of damages for wrongful foreclosure against Cal-Western, fraud against Aurora, negligent misrepresentation against Aurora, negligence against Aurora and Cal-Western, quiet title against Aurora, an accounting, breach of the contract of good faith and fair dealing, and injunctive relief.

On October 9, 2009, Plaintiffs also filed the instant motion to remand and/or to allow amendment of the complaint to clarify that damages are sought against Cal-Western.

On November 9, 2009, the parties stipulated to continue the hearing on the motion to remand until January 29, 2009, due to settlement negotiations.

Aurora filed an opposition to the remand motion on January 12, 2010.  Plaintiffs filed a reply on January 21, 2010.

## **ALLEGATIONS AND CAUSES OF ACTION**

According to the FAC, Plaintiff Cameron Lawrence acquired property in Groveland, California, in December 1997.  Thereafter, he and Plaintiff Marion Singer married and used community property to pay the mortgage and other property expenses.  The property is used as a vacation home.

In July 2006, Plaintiff Lawrence refinanced the home with a loan from First Magnus

2

Financial Corporation in the approximate amount of $230,000. The loan was secured by a deed of trust on the property to which First Magnus was the beneficiary, Alliance Title was the trustee and Plaintiff Lawrence was the trustor. Cal-Western subsequently was substituted as the trustee. After July 2006, Plaintiffs believe that First Magnus assigned its interest to Mortgage Electronic Registration Systems, Inc., which later traded the servicing of the loan to Aurora.

From August 2006 through September 2008, Plaintiffs made monthly mortgage payments of $823 to Aurora. In October 2008, Plaintiff Singer telephoned Aurora to request a loan modification. An Aurora representative reportedly advised her that Aurora would not consider a loan modification until Plaintiffs were sixty to ninety days behind on their loan payments. Based on this, Plaintiffs did not make the October 2008 mortgage payment.

On October 22, 2008, Plaintiff Singer spoke to another Aurora representative regarding the loan modification program. She was advised that someone would contact her in the next thirty days to review.

On November 5, 2008, an Aurora representative telephoned Plaintiff Singer and asked that Plaintiffs make the missed mortgage payments. Plaintiff Singer advised the Aurora representative that Plaintiffs had requested a loan modification. Aurora's representative indicated to Plaintiff Singer that the file had been referred for review again and she should be receiving a letter with a form to complete in the mail in the next 30 days.

On December 16, 2008, "unbeknownst to Plaintiffs," a Notice of Default was recorded by Defendants against the property. FAC, ¶ 20. Plaintiffs allege that at no time was a copy of the Notice of Default served by mail at their last known address as required by Civil Code §2924b(b). Plaintiffs also allege that at no time did they receive a copy of the Notice of Default and they were never advised by Defendants that a Notice of Default had been recorded despite being in telephone contact with Aurora. Plaintiffs assert that if they had been advised that a Notice of Default had been recorded against the property, "they would have immediately brought the loan current and cured the default." FAC, ¶ 20.

On or about January 12, 2009, Plaintiffs received a form to be completed from Aurora. They completed the form and faxed it back to Aurora with requested financial information.

3

On or about February 10, 2009, Plaintiff Singer telephoned Aurora regarding the status of the loan modification. An Aurora representative advised her that Aurora had not received the completed form and financial information. Plaintiff Singer immediately refaxed the documentation and spoke to "Connie in the modification department." FAC, ¶ 18. Connie informed Plaintiff Singer that it would take a week for the documentation to show up in Aurora's computer system.

On or about February 17, 2009, Plaintiff Singer telephoned Aurora regarding the status of the loan modification and to confirm Aurora's receipt of documentation. Aurora's representative told her to call back at the end of the week. Plaintiff Singer then telephoned Aurora on or about February 20, 2009. Aurora's representative informed Plaintiff Singer that Aurora still had not received the documentation. Plaintiff Singer again faxed the information.

On March 10, 2009, Plaintiff Singer spoke to an Aurora representative who assured her that Aurora was reviewing the file and the review could take as much as thirty to sixty days.

On April 1, 2009, Plaintiff Lawrence filed for Chapter 7 bankruptcy protection. Shortly thereafter, Plaintiff Singer had a telephone conversation with Aurora's representative. The representative advised Plaintiff Singer that Aurora would not work with Plaintiffs in the home retention department because of the bankruptcy filing. Aurora's representative advised Plaintiff Singer that it either would have to be resolved through the court system or that Plaintiff Lawrence would have to dismiss the bankruptcy proceeding and then Aurora would work with them on a loan modification. Based on this, Plaintiff Lawrence dismissed his bankruptcy action on May 25, 2009.

On June 8, 2009, Aurora sent a letter to Plaintiffs advising them to "call as quickly [sic] and a Home Retention Counselor will be available to discuss your current financial situation and potential solutions." FAC, ¶ 22. The letter also requested that Plaintiffs send certain financial information to Aurora. Plaintiffs immediately contacted Aurora and sent the information.

On or about July 17, 2009, Aurora told Plaintiff Singer by telephone that it had posted a Notice of Sale on the door of the property on or about March 21, 2009, advising that the property was to have been sold on April 6, 2009. Plaintiffs never saw the posted notice despite repeated trips to the property after March 21, 2009. The property is located in a gated community to

4

which access is limited to residents and their guests.  Plaintiffs are informed and believe and allege that despite Aurora and Cal-Western's assertions to the contrary, the Notice of Sale was never posted on the property as required by Civil Code § 2924b.  Plaintiffs further allege that Defendants did not serve them with the Notice of Sale by mail at their last known address at least twenty days before the date of sale as required by Civil Code § 2924b.  Plaintiffs have not determined whether the Notice of Sale was posted in a public place where the property was to be sold or published once a week for three consecutive calendar weeks in the city where the property was located as required by Civil Code § 2924f.

In her telephone conversations with Aurora, Plaintiff Singer repeatedly advised Aurora that Plaintiffs had not received any Notice of Sale and asked whether a foreclosure sale had been set.  Aurora repeatedly advised her that no foreclosure date had been set.  Plaintiffs contend that Aurora was on notice prior to the foreclosure sale that Cal-Western had not complied with applicable statutory requirements and had not performed all duties required by the Deed of Trust.

Plaintiffs further allege that they were never advised by Aurora that they did not qualify for a loan modification or that Aurora would not agree to a loan modification.

On June 26, 2009, "with no notice to Plaintiffs," Cal-Western conducted a trustee's sale and sold the property to Aurora.  Cal-Western executed and delivered to Aurora a trustee's deed upon sale of the property.  Aurora reportedly paid $240,878.71 for the property, which Plaintiffs believe was the amount claimed by Aurora as the unpaid debt.  Plaintiffs allege that if they had been advised by Defendants of the trustee's sale prior to its occurrence, they would have paid any and all amounts necessary "to reinstate the loan."  FAC, ¶ 28.

Plaintiffs further contend that they only learned that the property had been sold when they discovered a notice posted on the door of the property on July 17, 2009, by Kelley O'Toole, a realtor obtained by Aurora to market the property.  The notice advised them that Ms. O'Toole had been requested to determine the occupancy status of the property.  Plaintiffs immediately contacted Ms. O'Toole and she informed them of the trustee's sale.

On or about July 24, 2009, a Notice to Vacate was posted on the door of the property. Plaintiffs assert causes of action to set aside the trustee's sale and to cancel the trustee's

deed against all Defendants, recovery of damages for wrongful foreclosure against Cal-Western, fraud against Aurora, negligent misrepresentation against Aurora, negligence against Aurora and Cal-Western, quiet title against Aurora, an accounting, breach of the contract of good faith and fair dealing, and injunctive relief.

On December 7, 2009, Aurora filed a motion to dismiss the first, second, sixth, seventh, eighth, ninth and tenth causes of action. On January 25, 2010, the Court dismissed with prejudice the FAC's claims against Aurora for set aside trustee's sale (first), cancel trustee's deed (second), negligence (sixth), quiet title (seventh), accounting (eighth), breach of contract of good faith and fair dealing (ninth), and injunctive relief (tenth). The Court ordered Aurora to file an answer to the remaining claims by February 10, 2010.

By the instant motion, Plaintiffs seek remand of the action to state court.

## **DISCUSSION**

A.  Legal Standard -*Removal Jurisdiction*

By statute "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The party seeking to invoke federal jurisdiction bears the burden of establishing jurisdiction. See Indus. Tectonics, Inc. v. Aero Alloy, 912 F. 2d 1090, 1092 (9th Cir. 1990).

To establish jurisdiction based on diversity, there must be complete diversity of citizenship and an amount in controversy greater than $75,000 exclusive of interest and costs. 28 U.S.C. § 1332(a).

B.  Analysis

Plaintiffs move for remand on the ground that Defendants cannot demonstrate complete diversity because Cal-Western, the trustee, is a California corporation. In this case, Cal-Western filed a declaration of nonmonetary status in state court on August 27, 2009, prior to removal. Pursuant to Cal. Civ. Code § 2924l, parties appearing in the action have fifteen days from service of the declaration to object to the trustee's nonmonetary status declaration. The objections must

6

be served on the trustee. Cal. Civ. Code § 2924l(c). If "no objection is served within the 15-day objection period, the trustee shall not be required to participate any further in the action or proceeding, shall not be subject to any monetary awards as and for damages, attorneys' fees or costs, shall be required to respond to any discovery requests as a nonparty, and shall be bound by any court order relating to the subject deed of trust that is the subject of the action or proceeding." Cal. Civ. Code §2924l(d). Where no objections have been made, courts have treated the trustee as a nominal party and disregarded its citizenship for diversity purposes on removal. See, e.g., Delgado v. Bank of America Corp., 2009 WL 4163525 (E.D.Cal. Nov. 23, 2009) (no objections filed to declaration of nonmonetary status and trustee treated as nominal party; motion to remand denied); Amaro v. Option One Mortg. Corp., 2009 WL 103302, at *1 (C.D.Cal. Jan. 14, 2009) (noting that filing a declaration of nonmonetary status in state court transformed substitute trustee into a nominal third party); Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 873 (9th Cir. 2000) ("We will ignore the citizenship of nominal ... parties who have no interest in the action, and are merely joined to perform the ministerial act of conveying the title if adjudged to the complainant"). Here, Plaintiffs did not timely serve or file objections to Cal-Western's declaration. Plaintiffs claim that they were "precluded" from filing objections because the action was removed from state court. As Aurora points out, the statute requires that the objections be served on the trustee. Plaintiffs do not explain why they could not serve objections on the trustee and/or file them in this Court. Accordingly, at the time of removal, Cal-Western was essentially a nominal party and could be disregarded for purposes of diversity jurisdiction.

At issue, however, is whether Plaintiffs are now entitled to have Cal-Western participate in the action, which would destroy diversity jurisdiction. Plaintiffs argue that Cal. Civ. Code § 2924l provides a mechanism to have the trustee participate in the action. Specifically, § 2924l(e) provides that if "the parties elect not to, or fail to, timely object to the declaration of nonmonetary status, but later through discovery, or otherwise, determine that the trustee should participate in the action because of the performance of its duties as a trustee, the parties may file and serve on all parties and the trustee a motion pursuant to Section 473 of the Code of Civil Procedure [to

7

amend] that specifies the factual basis for the demand."

In this case, Plaintiffs indicate that they filed the FAC to clarify that they were seeking damages against Cal-Western and to ensure that Cal-Western would be bound by any monetary judgment. Plaintiffs alternatively argue that the Court should permit amendment of the complaint pursuant to Fed. R. Civ. P. 15(a) to clarify that Plaintiffs are seeking damages against Cal-Western. Plaintiffs' request for leave to amend is MOOT because they were entitled to file the First Amended Complaint as a matter of course to assert a claim for money damages against Cal-Western for wrongful foreclosure. Fed. R. Civ. P. 15(a)(1). Defendant Aurora admits that Plaintiffs were so entitled.

Plaintiffs further contend that the FAC's action seeking damages for wrongful foreclosure is appropriate and Cal-Western should participate in this action. In this instance, the Court has dismissed Plaintiffs' claims to set aside the foreclosure sale. Case law suggests that where the trustor cannot sue to set aside the foreclosure sale, the trustor may seek damages from the trustee. See Moeller v. Lien, 25 Cal.App.4th 822, 832 (1994) ("Where trustor is precluded from suing to set aside the foreclosure, the trustor may recover damages from the trustee."); see also In re Hwang, 189 B.R. 786, 791 (C.D.Cal.1995) (trustor has no right to set aside a trustee's deed as against a bona fide purchaser for value by attacking the validity of the sale, but a trustor may recover damages from the trustee if the trustee has not followed the proper procedures).

Defendant contends that Plaintiffs may not assert a cause of action against the trustee because Plaintiffs failed to tender the full amount of the indebtedness. Case law does not clearly express that there is an obligation to tender the entire amount due under a loan in order to file a claim for damages against a trustee for wrongful foreclosure based on the trustee's failure to provide the requisite statutory notices of default and sale. See, e.g., Munger v. Moore, 11 Cal.App.3d 1, 7 (1970) ("a trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust"); but see Lopez v. Chase Home Finance, LLC, 2009 WL 1120318, *3 (E.D.Cal. Apr. 24, 2009) ("defaulted borrower is required to allege tender of the amount of the lender's secured indebtedness in order to maintain

any cause of action for irregularity in the sale procedure") (internal citations and quotations omitted); Yazdanpanah v. Sacramento Valley Mortg. Group, 2009 WL 4573381, *7 (N.D.Cal. Dec. 1, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secure debt to maintain any cause of action for wrongful foreclosure."). As such, the Court now determines that Plaintiffs have alleged a cause of action for damages against the trustee in the FAC and the trustee should participate in the instant action. The citizenship of the trustee, Cal-Western, destroys diversity. Accordingly, the Court is divested of subject matter jurisdiction and remand of the action is appropriate. 28 U.S.C. § 1447.

The Court notes that as Plaintiffs were entitled to amend the complaint, it does not consider the factors for amendment under Fed. R. Civ. P. 15(a)(2), including whether amendment is futile. Loehr v. Ventura County Cmty. Coll. Dist., 743 F.2d 1310, 1319 (9th Cir. 1984) (factors to be considered for leave to amend include futility of amendment). The Court also does not consider the issue under a Fed. R. Civ. P. 12(b)(6) standard to determine whether Plaintiffs can prove any set of facts to support a claim that would merit relief. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Indeed, the Court does not examine whether Plaintiffs (1) had actual notice of the sale, (2) had knowledge that they were in default and the property may be sold, (3) had knowledge that a foreclosure sale was imminent; (4) undertook efforts to delay a foreclosure sale, (5) undertook efforts to cure their default, or (6) could have cured their default in light of the bankruptcy filing. See, e.g., Lehner v. United States, 685 F.2d 1187, 1190-91 (9th Cir. 1982) (fifth amendment challenge to HUD's alleged failure to notify of foreclosure sale under California procedure; due process not violated where plaintiff may not have received written notice, but plaintiff knew the foreclosure sale was imminent, undertook repeated efforts to delay the impending sale, and there was no suggestion that written notice would have supplied plaintiff with unknown information); Rauer v. Hertweck, 175 Cal. 278, 283 (1917) (judgment debtor claimed no notice of execution sale, but court found that resulting loss could more properly be attributed to plaintiff's neglect of his own interests than to any unfairness).

**ORDER**

1     Based on the above, Plaintiffs' motion to remand is GRANTED. This action is
2 REMANDED to the Tuolumne County Superior Court for all further proceedings.

4    IT IS SO ORDERED.

5    **Dated:**   **February 8, 2010**            **/s/ Dennis L. Beck**
                                                        UNITED STATES MAGISTRATE JUDGE